IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DENNIS DONNELL JONES, )
 )
   Petitioner, )
 )
 ) CIV-04-1544-F
v. )
 )
MIKE MULLIN, Warden, )
 )
   Respondent. )

## REPORT AND RECOMMENDATION

Petitioner has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C.

§2254. Petitioner is challenging his convictions for Assault and Battery with a Dangerous

Weapon with Intent to Kill (count two), Forcible Oral Sodomy (count five), two counts of

Rape in the First Degree (counts six and seven), Robbery with a Dangerous Weapon (count

eight), and Assault and Battery with a Deadly Weapon with Intent to Kill (count ten), all

After Former Conviction of Two or More Felonies, entered in the District Court of Oklahoma

County, Case No. CF-2001-4345. For these convictions, Petitioner was sentenced to

consecutive terms of imprisonment of 50 years, 25 years, 75 years, 75 years, 35 years, and

75 years, respectively. In lieu of a response to the Petition, Respondent moved to dismiss

the Petition for failure to exhaust state court remedies. Petitioner has not responded to the

Motion to Dismiss. However, Petitioner has filed a Motion to Dismiss Habeas Corpus

Petition Without Prejudice and/or Motion to Stay Proceedings to Allow Petitioner the

1

Opportunity to Exhaust State Court Remedies ("Motion to Dismiss and/or Motion to Stay"),

to which Respondent has responded ("Respondent's Response"). Respondent has also filed

a Supplemental Brief in Response to the Petitioner's Motion to Dismiss the Instant Habeas

Petition or Stay Proceedings ("Supplemental Response").  The matter has been referred to

the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C.

§636(b)(1)(B).  For the following reasons, it is recommended that Respondent's Motion to

Dismiss be DENIED.  It is further recommended that Petitioner's Motion to Dismiss and/or

Motion to Stay be DENIED and that the Petition be DENIED on its merits.

In his Petition, Petitioner raises four grounds for habeas relief from his convictions

in Case No. CF-2001-4345.  In ground one of the Petition, Petitioner raises two separate

claims.  He contends (1) there was insufficient evidence to support each of his convictions

and (2) his appellate counsel provided ineffective assistance of counsel because counsel

failed to raise the issue of insufficiency of the evidence in Petitioner's direct appeal.

Petitioner alleges in ground two of the Petition that the trial court erred in refusing

Petitioner's request for a jury instruction concerning Oklahoma's law on parole eligibility.

In ground three of the Petition, Petitioner asserts that prosecutorial misconduct in the form

of "repeated infammatory [sic] remarks" in both stages of the jury trial denied Petitioner due

process and a fair trial. Petition, at 7.

I. Exhaustion and Statute of Limitations

"An application for a writ of habeas corpus on behalf of a person in custody pursuant

to the judgment of a State court shall not be granted unless it appears that the applicant has

exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A); see Baldwin v. Reese, 541 U.S. 27, 29 (2004); Anderson v. Harless, 459 U.S. 4 (1982); Rose v. Lundy, 455 U.S. 509 (1982).  A habeas petitioner satisfies the exhaustion requirement by showing either (1) "that a state appellate court has had the opportunity to rule on the same claim presented in federal court," or (2) "that at the time he filed his federal petition, he had no available state avenue of redress." Miranda v. Cooper, 967 F.2d 392, 398 (10th Cir.), cert. denied, 506 U.S. 924 (1992).  See also 28 U.S.C. §2254(b)(1)(B)(i) and (ii).  A habeas petition containing unexhausted claims is subject to dismissal unless the petitioner establishes that a recognized exception to the exhaustion requirement applies to excuse the lack of exhaustion. Miranda, 967 F.2d at 398; accord, Hernandez v. Starbuck, 69 F.3d 1089, 1092 (10th Cir. 1995), cert. denied, 517 U.S. 1223 (1996); White v. Meachum, 838 F.2d 1137, 1138 (10th Cir. 1988).   Nevertheless, a habeas petition may be denied on its merits despite the petitioner's failure to satisfy the exhaustion requirement. 28 U.S.C. §2254(b)(2).

The issues raised in grounds two and three in the Petition were raised in Petitioner's direct appeal. Respondent's Brief in Support of Motion to Dismiss, Exs. 1-3. The Oklahoma Court of Criminal Appeals ("OCCA") affirmed Petitioner's convictions in a summary opinion entered August 28, 2003. Id., Ex. 3 (Jones v. State, No. F-2002-1011 (Okla. Crim. App. Aug. 28, 2003)(unpublished op.)).  However, Petitioner has not shown that the two issues raised in ground one of Petition have been exhausted in the state courts.

In light of the "mixed" nature of the habeas Petition, Respondent has moved to dismiss the Petition without prejudice.  In the Petition itself and in his Motion to Dismiss

and/or Motion to Stay, Petitioner concedes that he has failed to exhaust state court remedies concerning the issues of insufficient evidence and ineffective assistance of appellate counsel asserted in ground one of his Petition.  In Respondent's Motion to Dismiss, Respondent seeks the dismissal of the Petition on the ground that Petitioner has failed to exhaust available state court remedies.  In Petitioner's Motion to Dismiss and/or Motion to Stay, Petitioner asks the Court to either dismiss the Petition without prejudice to refiling a petition following his exhaustion of state court remedies or, alternatively, to administratively stay the instant proceeding while he returns to state court to exhaust the unexhausted claims.

In consideration of Respondent's Motion to Dismiss and Petitioner's Motion to Dismiss and/or Motion to Stay, Respondent was directed to respond to the issue of dismissal of the Petition for failure to exhaust state court remedies in light of the one-year limitations period, 28 U.S.C. §2244(d)(1), governing the filing of Petitioner's habeas Petition. Respondent filed an initial response to the Petitioner's Motion to Dismiss and/or Motion to Stay in which Respondent contended that the Petitioner's motion to stay the Petition should not be granted because Petitioner has not diligently pursued his federal claims.  Following the issuance of the Supreme Court's opinion in Rhines v. Weber, ___ U.S. ___, 2005 WL 711587 (S.Ct. Mar. 30, 2005), Respondent was directed to file a supplemental response to Petitioner's Motion to Dismiss and/or Motion to Stay.  Respondent has now filed the Supplemental Response in which Respondent contends that Petitioner has not shown good cause for his failure to exhaust his claims in the state courts and that Petitioner's unexhausted

claims have no merit. Therefore, Respondent contends Petitioner is not entitled to an administrative stay of the proceeding to allow him to exhaust all of his habeas claims.

Petitioner filed the instant Petition on November 12, 2004, approximately two weeks before the 28 U.S.C. §2244(d)(1) one-year statute of limitations governing Petitioner's challenge to his convictions in Case No. CF-2001-4345 expired. Under 28 U.S.C. §2244(d)(1)(A), a habeas Petition must be filed within one year of the date that the prisoner's state court conviction(s) "became final by the conclusion of direct review or the expiration of the time for seeking such review." The alternative methods for determining the beginning of the one-year limitations period set forth in 28 U.S.C. §2244(d)(1) do not appear to relate to Petitioner's habeas Petition. Assuming, without deciding, that 28 U.S.C. §2244(d)(1)(A) is the operative subdivision of the statute governing the filing of the instant Petition, the one-year statute of limitations governing the filing of Petitioner's habeas petition ran from November 28, 2003, until November 28, 2004, or one year from the date on which the ninety-day period for filing a petition for certiorari in the Supreme Court expired following the entry of the OCCA's decision in his direct appeal. 28 U.S.C. §2244(d)(1)(A); Locke v. Saffle, 37 F.3d 1269, 1272 (10th Cir. 2001)("Under the statute, a petitioner's conviction is not final and the one-year limitation period for filing a federal habeas petition does not begin to run until ... 'after the United States Supreme Court has denied review, or, if no petition for certiorari is filed, after the time for filing a petition for certiorari with the Supreme Court has passed.'")(quoting Rhine v. Boone, 182 F.3d 1153, 1155 (10th Cir. 1999)).

The expiration of the §2244(d) limitation period soon after the Petition was filed presents a procedural quandary because of the "mixed" nature of the Petition. The Supreme Court recently reiterated its holding in Rose, supra, that "federal district courts must dismiss mixed habeas petitions." Pliler v. Ford, ___ U.S. ___, 124 S.Ct. 2441, 2445 (2004).  The Supreme Court held in Pliler that federal courts are not required to advise habeas petitioners who file mixed petitions as to the consequences under 28 U.S.C. §2244(d)(1) of a dismissal of the mixed petition to allow for the exhaustion of unexhausted claims. Id., at 2445-2447. Rather, the Court concluded that "Rose requires dismissal of mixed petitions, which, as a practical matter, means that the prisoner must follow one of the two paths outlined in Rose if he wants to proceed with his federal habeas petition." Id., at 2447.

Under Rose, a habeas petitioner who files a "mixed" petition containing one or more unexhausted claims as well as exhausted claims has the option to (1) dismiss the unexhausted claims and proceed with the exhausted claims or (2) dismiss the petition and file a habeas petition in the future following exhaustion of his state court remedies concerning all of the habeas claims.  In the second option, the dismissal of the petition would be without prejudice. However, the time during which the instant Petition is pending in federal court does not toll the running of the one-year limitations period governing the habeas petitioner's claims.  See Duncan v. Walker, 533 U.S. 167 (2001).

Petitioner requests in his Motion to Dismiss and/or Motion to Stay that his Petition be dismissed without prejudice to allow him to return to state court to exhaust his state court remedies concerning the claims asserted in ground one of the Petition.  Alternatively to his

request to voluntarily dismiss the Petition without prejudice, Petitioner requests that the Court administratively stay the entire habeas proceeding to allow him to exhaust the unexhausted claims in the state courts.   With this alternative request for a stay, Petitioner is proposing that the Court adopt a stay-and-abeyance procedure in order to preserve his right to seek habeas relief despite the expiration of the §2244(d)(1) limitations period.

Under circumstances similar to those present in this case, the stay-and-abeyance procedure is a logical solution, and one that was recently approved by the Supreme Court in Rhines v. Weber, __ U.S. ___, 2005 WL 711587 (Mar. 30, 2005).  In Petitioner's case, the one-year §2244(d)(1) limitations period adopted as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA")  expired soon after Petitioner filed this Petition and before Petitioner requested a "stay" for the purpose of exhausting his admittedly unexhausted claims.  In Rhines, the Supreme Court recognized that

> [a]s a result of the interplay between AEDPA's 1-year statute of limitations and [Rose v.] Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims.  If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under Lundy after the limitations period has expired, this will likely mean the termination of any federal review.

Rhines, 2005 WL 711587, at *4.  Recognizing "the gravity of this problem and the difficulty it has posed for petitioners and federal district courts," the Supreme Court in Rhines addressed the legitimacy of the stay-and-abeyance procedure employed in many district courts to deal with this issue. Id.

The Court recognized that district courts have the authority to issue stays and that the AEDPA does not deprive district courts of that authority in the exercise of the courts' discretion. Id.  However, because the use of a stay-and-abeyance procedure might detract from, rather than further, the goals of the AEDPA to "reduce delays in the execution of state and federal criminal sentences" and to ensure the finality to state court judgments, the Court in Rhines approved the use of a stay-and-abeyance procedure only "in limited circumstances" "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id., at *4 - *5.  Moreover, the Supreme Court concluded in Rhines that "even if a petitioner had good cause for that failure, the district court would abuse its  discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Id., at *5.  Moreover, the Supreme Court concluded that "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." Id.

In Respondent's Supplemental Response to Petitioner's Motion to Dismiss and/or Motion to Stay, Respondent contends that Petitioner has not shown good cause under the standard established in Rhines for administratively staying a habeas proceeding involving a "mixed" petition.  As cause for his failure to exhaust his state court remedies, Petitioner alleges that he has no legal training and was unaware of the exhaustion requirement.  Motion to Dismiss and/or Stay, at 2.  The form Petition completed by Petitioner in his own hand-writing advised Petitioner that he was required to exhaust available state court remedies as to each of the claims for relief urged in the Petition.  On the form Petition, Petitioner states

merely that "[n]o further action was taken" to exhaust his state court remedies concerning the unexhausted claims he raises in ground one of the Petition.  Petition, at 6.

It is not necessary, however, to determine whether Petitioner has shown good cause sufficient to warrant the granting of his request for a stay of the instant proceeding.  As the Supreme Court recognized in Rhines, district courts would abuse their discretion by granting a stay when the prisoner's unexhausted claims are plainly meritless.  Rhines, 2005 WL 711587, at *5.  Title 28 U.S.C. § 2254(b)(2) allows a district court to deny a habeas petition on its merits notwithstanding the petitioner's failure to exhaust available state court remedies. Having considered the merits of both the exhausted and the unexhausted claims raised by Petitioner, the undersigned finds that the Petitioner's claims have no merit.  Therefore, the Petitioner's request for a stay should be denied, and the Petition should be denied notwithstanding Petitioner's failure to satisfy the exhaustion requirement.  28 U.S.C. §2244(b)(2).

II. Background

On August 8, 2001, Petitioner was charged in the District Court of Oklahoma County, Case No. CF-2001-4345, in a ten-count information charging him with multiple violent offenses. <www.oscn.net> (docket sheet in State of Oklahoma v. Dennis Donnell Jones, Case No. CF-2001-4345).  One of the counts charged in the information was dismissed by the prosecution, and two more counts were dismissed by the trial court in pre-trial proceedings. Prior to trial, an amended information was filed charging Petitioner with seven counts, including two counts of assault and battery with a dangerous weapon, two counts of first

degree rape, kidnaping, oral sodomy, and robbery with a dangerous weapon.  A bifurcated jury trial was  conducted on the charges on June 17-20, 2002.  The jury returned verdicts of guilty on six of the seven counts charged in the information and not guilty on the kidnaping charge.  In the second stage of the proceeding, the prosecution presented evidence of Petitioner's prior felony convictions, and the jury recommended punishment for the offenses. Petitioner was sentenced in accordance with the jury verdict to serve the six, consecutive terms of imprisonment described herein.

III. Sufficiency of the Evidence

In ground one of the Petition, Petitioner contends that there was insufficient evidence presented at his trial to support each of the convictions.  Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993).  For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Jackson).  Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir.), cert. denied, 523 U.S. 1110(1998).  In applying this standard, the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's

10

resolution of the evidence as long as it is within the bounds of reason.'" <u>Messer</u>, 74 F.3d at 1013 (quoting <u>Grubbs v. Hannigan</u>, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. <u>Jackson</u>, 443 U.S. at 309, 324 n.16. In Oklahoma, an assault is defined as "any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another." Okla. Stat. tit. 21, §641.  In Oklahoma, a battery is defined as "any willful and unlawful use of force or violence upon the person of another." Okla. Stat. tit. 21, §642.  Assault and battery with a dangerous weapon is committed in Oklahoma under circumstances in which "[a]ny person ... commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death, or in any manner attempts to kill another...."  Okla. Stat. tit. 21, §652(C). Rape is defined in Oklahoma as "an act of sexual intercourse involving vaginal or anal penetration accomplished with a male or female who is not the spouse of the perpetrator ... where force or violence is used or threatened, accompanied by apparent power of execution to the victim or to another person." Okla. Stat. tit. 21, §1111(A).  First degree rape is committed under circumstances in which the rape is "accomplished with any person by means of force, violence, or threats of force or violence accompanied by apparent power of execution regardless of the age of the person committing the crime." Okla. Stat. tit. 21, §1114(A)(3).  Robbery is defined in Oklahoma as "a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Okla. Stat. tit. 21, §791.  Robbery with a dangerous

11

weapon is any robbery committed with "any firearms or any other dangerous weapons...." Okla. Stat. tit. 21, §801. Forcible sodomy is defined in Oklahoma as a crime in which "[a]ny person ... forces another person to engage in the detestable and abominable crime against nature ..." Okla. Stat. tit. 21, §888(A). This crime includes "[s]odomy accomplished with any person by means of force, violence, or threats of force or violence accompanied by apparent power of execution regardless of the age of the victim or the person committing the crime..." Okla. Stat. tit. 21, §888(B)(3).

The evidence at Petitioner's trial was more than sufficient to support the jury finding of guilt beyond a reasonable doubt as to each of the offenses. The prosecution presented the testimony of the two victims of the violent physical and sexual assaults and robbery. Both victims clearly identified Petitioner as the offender during the trial based on their previous, personal contact with Petitioner on several occasions. Each victim provided testimony concerning the date, time, and circumstances of the offenses that was consistent with the testimony of the other victim. The evidence showed that Petitioner lured the male victim to a house by telling the victim he had an illegal substance, crack cocaine, he wanted to share with the victim. The victim testified that he knew Petitioner by the name of Brigadier, and Petitioner testified at trial that this is the name he used. The male victim testified that once he and Petitioner were alone in the house Petitioner repeatedly stabbed the victim with a knife, forced the victim by using the knife to give him the few dollars the victim was carrying in a shirt pocket, and beat the victim with a glass bottle. The female victim testified that she went to the house to visit some friends and that once she was inside the house, Petitioner cut

her throat and repeatedly raped and sodomized her while threatening to kill her and by using the knife to force her to submit to the sexual assaults.  The male victim testified that he saw Petitioner cut the female victim's throat before Petitioner dragged her into another room, and the female victim testified that she saw Petitioner stab the male victim repeatedly.  Both of the victims managed to escape from the house.  The victims were treated at a hospital where the male victim underwent surgery to repair his stab wounds.  The evidence presented at the trial showed that Petitioner's fingerprint was lifted from the blood on a beer bottle taken from the house where the offenses occurred and that the house showed evidence of a bloody and violent altercation.  Another individual testified that he helped the male victim escape from the house through a window and carried the bloody victim down the street and that emergency medical personnel were then called to assist both of the victims.  A search of the house where the offenses occurred was conducted, and during this search Petitioner's driver's license was found in one of the bedrooms.  Petitioner admitted during his testimony that he lived in the house where the offenses occurred.

Petitioner has alleged only that he was innocent and that there was "absolutely no evidence" to support his convictions.  Petitioner testified at his trial that he was not present at the time of the assaults and robbery because he was elsewhere during the time that the assaults and robbery occurred.  When questioned on cross-examination concerning the fingerprint evidence, Petitioner could not provide a reason for the presence of his fingerprint on the bloody glass bottle found at the scene of the crimes.  The jury obviously did not believe Petitioner's alibi defense.  Because there was more than sufficient evidence for a

rational jury to have found Petitioner guilty of the offenses of which he was convicted beyond a reasonable doubt, Petitioner's claim of insufficient evidence is without merit and Petitioner is not entitled to habeas relief.

IV. Ineffective Assistance of Appellate Counsel

Petitioner contends in ground one that his failure to raise the claim of insufficient evidence in his direct appeal was caused by ineffective assistance provided by his appellate counsel. To establish that he received constitutionally ineffective assistance of appellate counsel, Petitioner must satisfy both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668 (1984); that is, he must show that his appellate attorney's representation fell below an objective standard of reasonableness and that counsel's error(s) prejudiced the Petitioner. Id., at 687. Prejudice is shown only where there is a reasonable probability that if the error(s) had not occurred the result of the appeal would have been different. Id. "Judicial scrutiny of the adequacy of attorney performance must be strongly deferential: '[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997)(quoting Strickland, 466 U.S. at 689). "Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the error." Id. Accord, Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689.

The Sixth Amendment "does not require an attorney to raise every nonfrivolous issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995)(citing Jones v. Barnes, 463 U.S. 745, 751 (1983)). "It is completely reasonable, and in fact advisable, for appellate

counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." Jackson v. Shanks, 143 F.3d 1313, 1321 (10th Cir.), cert. denied, 525 U.S. 950 (1998). See Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999)(if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance).

Petitioner's assertion of ineffective assistance of appellate counsel is based solely on his appellate counsel's failure to assert the claim of insufficiency of the evidence to support each of the convictions. Petitioner provides no factual support for his claim of insufficiency of evidence. He merely urges that he is innocent of the offenses. Because the issue of insufficient evidence underlying Petitioner's claim of ineffective assistance of appellate counsel is meritless, Petitioner has failed to demonstrate that his appellate counsel provided professionally unreasonable assistance by failing to assert the insufficient evidence claim in Petitioner's direct appeal. Consequently, Petitioner has not shown that he received ineffective assistance of appellate counsel. See Hawkins, 185 F.3d at 1152 (if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance).

## V. Trial Court Error - Omitted Jury Instruction

Petitioner contends in ground two of the Petition that the trial court erred in failing to instruct the jury that under Oklahoma law Petitioner would not be eligible for parole until he

had served 85 percent of the sentences imposed for the convictions.[1]  Petitioner raised this same claim in his direct appeal, and the OCCA rejected the claim. Under these circumstances, habeas relief may be awarded only if the OCCA's adjudication of the same claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).  Thus, federal courts reviewing habeas claims that have previously been resolved on the merits in state courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H.R.Conf.Rep.No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion opposite to that reached by the Supreme Court on a

---

[1]Although Respondent urged in his Supplemental Response that Petitioner should be denied a stay and that Petitioner's unexhausted claims have no merit, Respondent has not addressed the remaining, exhausted claims raised in grounds two and three of the Petition. Furthermore, Respondent contends in the Supplemental Response that Petitioner's claim of insufficient evidence is procedurally barred.  The undersigned declines to reach the complex issue of procedural default as it is simpler to reach the merits of the insufficient evidence claim, especially considering the fact that the insufficient evidence claim is the underlying claim supporting Petitioner's claim of ineffective assistance of appellate counsel.  Despite Respondent's failure to respond to the merits of the exhausted claims raised in grounds two and three of the Petition, the undersigned may address the merits of these claims in the exercise of judicial discretion under Rule 4, Rules Governing Section 2254 Cases in the United States District Courts.

question of law or (2) decided an issue differently than the Supreme Court has on a set of materially indistinguishable facts. Id. at 405-406.  The "state court decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(per curiam).  "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 8 (2002)(per curiam)).  A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner."  Brown v. Payton, _ U.S. _, 125 S.Ct. 1432, 1439 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court case] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(per curiam).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, _ S.Ct. _, 124 S.Ct. 2736, 2737-2738 (2004)(per curiam)(citations omitted).   The AEDPA also mandates that factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. §2254(e)(1).

The Supreme Court has stated that, with respect to alleged errors in jury instructions, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of

a due process violation." <u>Middleton v. McNeil</u>, 541 U.S. 433, 124 S.Ct. 1830, 1832 (2004).

"The question is 'whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process.'" <u>Id.</u> (quoting <u>Estelle v. McQuire</u>, 502 U.S. 62, 72 (1991))(internal quotation omitted).  The Supreme Court has held due process requires that a jury be informed, either in a jury instruction or in arguments by counsel, as to parole eligibility only in capital cases in which future dangerousness is an issue. <u>Simmons v. South Carolina</u>, 512 U.S. 154 (1994). <u>Accord</u>, <u>Ramdas v. Angelone</u>, 530 U.S. 156, 167 (2000)("The parole-ineligibility instruction is required only when, assuming the jury fixes the sentence at life, the defendant is ineligible for parole under state law.").

"Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the error had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense." <u>Shafer v. Stratton</u>, 906 F.2d 506, 508 (10th Cir.), <u>cert. denied</u>, 498 U.S. 961 (1990). <u>Accord</u>, <u>Roberts v. Ward</u>, No. 98-6066, 1999 WL 162751 (10th Cir. Mar. 25, 1999)(unpublished op.). The petitioner who attacks a state conviction on the basis of the jury instructions "has a great burden." <u>Maes v. Thomas</u>, 46 F.3d 979, 984 (10th Cir.), <u>cert. denied</u>, 514 U.S. 1115 (1995).

The OCCA rejected Petitioner's claim of state law and constitutional error in the failure to give an instruction on the issue of parole eligibility under Oklahoma law.  Citing only a previous OCCA decision on the issue, the OCCA concluded that the trial court "was not required to advise the jury that [Petitioner] would be required to serve 85% of the sentence imposed before becoming eligible for parole." Brief in Support of Motion to

18

Dismiss, Ex. 3.  This decision is not contrary to or an unreasonable application of clearly-established Supreme Court jurisprudence, and the omission of a jury instruction on the issue of parole eligibility did not render Petitioner's trial fundamentally unfair. Accordingly, Petitioner is not entitled to habeas relief concerning this claim.

VI. Prosecutorial Misconduct

In ground three of the Petition, Petitioner contends that prosecutorial misconduct denied him a fair trial.  The only factual support provided for this claim is a reference to "repeated infammatory [sic] remarks of the prosecutor during the first and second stages of the trial." Petition, at 7.  Petitioner states that this issue was raised in his direct appeal, and it is assumed that Petitioner is relying on the same claim of prosecutorial misconduct that he raised in his direct appeal.

On appeal, Petitioner supported his claim of prosecutorial misconduct by first citing to two questions by the prosecutor directed to prosecution witnesses.  In one instance, Petitioner contended that the prosecutor "improperly bolstered the testimony of a witness" by eliciting testimony from a law enforcement fingerprint examiner that another examiner had verified her work and confirmed her identification of the Petitioner's fingerprint. Brief in Support of Motion to Dismiss, Ex. 1, at 15-16.  In another instance, Petitioner contended that the prosecutor elicited testimony from a police detective that "improperly bolster[ed] the testimony of [the female victim] by vouching for the truthfulness of her statements." Id., at 16.

Petitioner also supported his claim of prosecutorial misconduct by citing to certain questions propounded to Petitioner by the prosecutor during the prosecutor's cross-examination of Petitioner. Petitioner contended that these questions effectively commented on the Petitioner's right to remain silent. In one of these instances, Petitioner conceded in his direct appeal that Petitioner's counsel objected to the prosecutor's question, the objection was sustained, and the jury was admonished to disregard the question and answer. Petitioner cited a second instance in which the prosecutor allegedly presented a question to Petitioner that allegedly reflected on Petitioner's right to remain silent, and Petitioner again conceded that the question was met with an objection, which was sustained by the trial court.

Petitioner further alleged in his direct appeal that "the prosecutor made repeated statements designed to mislead the jury and convey an erroneous impression that [Petitioner] had the burden of proof in the case" by citing to certain statements made by the prosecutor during closing arguments of the first stage of the trial. Id., at 17-18. Petitioner conceded in his appeal that defense counsel objected to each of these statements and that the trial court advised the prosecutor to move on to another argument.

Petitioner also alleged in his direct appeal that the prosecutor "attempted to elicit sympathy for [the female victim] and vouch for her testimony...." during the first stage closing arguments. Id., at 18. With respect to all of these allegations of prosecutorial misconduct, Petitioner did not assert that prosecutorial misconduct alone denied him a fair trial. Instead, Petitioner asserted that the allegedly improper questions and arguments by the

prosecutor, when combined with the omission of the parole-eligibility jury instruction, denied him due process and a fair trial.

The OCCA rejected Petitioner's claim of trial-based prosecutorial misconduct in his direct appeal. The appellate court found that any errors occurring during the trial were harmless beyond a reasonable doubt. Brief in Support of Motion to Dismiss, Ex. 3, at 2. Under these circumstances, habeas relief may be awarded only if the OCCA's adjudication of the same claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. §2254(d), under the standard previously described.

Generally, "[i]n determining whether a petitioner is entitled to federal habeas relief for prosecutorial misconduct, it must be determined whether there was a violation of the criminal defendant's federal constitutional rights which so infected the trial with unfairness as to make the resulting conviction a denial of due process." Fero v. Kerby, 39 F.3d 1462, 1473 (10th Cir. 1994)(citing Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)), cert. denied, 515 U.S. 1122 (1995). Accord, Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir.), cert. denied, 522 U.S. 844 (1997). Judicial review of the fundamental fairness of a trial "requires examination of the entire proceedings, including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002), cert. denied, 540 U.S. 833 (2003).   "Any

cautionary ... instructions to the jury ... to counteract improper remarks may also be considered." Id.  However, if the alleged prosecutorial misconduct denied the petitioner a specific constitutional right other than the due process right to a fair trial, "a valid habeas claim may be established without proof that the entire trial was rendered fundamentally unfair." Id. (citing Paxton v. Ward, 199 F.3d 1197, 1217 (10th Cir. 1999)(where prosecutor's remarks infringed upon specific constitutional rights to present mitigating evidence, to rebut evidence and argument used against petitioner, and to confront and cross-examine the prosecution's witnesses, petitioner may establish his right to habeas relief without showing that the comments rendered his sentencing fundamentally unfair)).

With respect to the Petitioner's claim of prosecutorial misconduct based on questioning that allegedly "bolstered" the testimony of prosecution witnesses, attempted to vouch for the credibility of the testimony of a prosecution witness, or attempted to elicit sympathy for the prosecution witness, Petitioner relies on the general due process right to a fair trial.  No Supreme Court decision has concluded that such questioning violates the due process rights of a defendant.  Given the substantial evidence of Petitioner's guilt presented at his trial, Petitioner has not shown that any of the questions propounded by the prosecutor of the prosecution's witnesses rendered his trial so fundamentally unfair as to deny him due process.

In Doyle v. Ohio, 426 U.S. 610 (1976), the Supreme Court held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." Id., at 619.  In Brecht v. Abrahamson, 507 U.S. 619 (1993), the Supreme Court addressed the

22

standard for reviewing a claim of <u>Doyle</u> error.   The Court stated that "[t]he 'implicit assurance' upon which we have relied in our <u>Doyle</u> line of cases is the right-to-remain-silent component of <u>Miranda</u>.   Thus, the Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest...or after arrest if no <u>Miranda</u> warnings are given." <u>Brecht</u>, 507 U.S. at 628.   In this case, there was no evidence that Petitioner was given <u>Miranda</u> warnings.   However, Petitioner testified he was in custody for eight months preceding the trial, and it may be assumed that Petitioner was provided <u>Miranda</u> rights at some time during this detention.

Petitioner was the only witness presented by the defense at his trial.   Petitioner testified that he was not present during the physical and sexual assaults and robbery of the victims because he had traveled to Spencer, Oklahoma, that day with a friend of his named Greg Shelton. During the prosecutor's cross-examination of Petitioner, the prosecutor asked Petitioner how long he had been in custody.   Petitioner responded that he had been in custody for eight months.   The prosecutor then asked Petitioner the following question, "During that eight months, how many people did you tell about your alibi?" State Court Transcripts (Doc. #32), Transcript of Jury Trial Proceedings Had on the 20th and 21st Days of June, 2002 ("Transcript of June 20th-21st Jury Trial"), at 128.   Petitioner's defense counsel immediately objected, the objection was sustained, and the jury was admonished to disregard the question. After further questioning, the prosecutor asked Petitioner, "When did it first occur to you that it was important to mention Greg Shelton?" Transcript of June 20th-21st Jury Trial, at 133.

This question was also immediately met with an objection, which was sustained by the trial court.

Even assuming that the questions posed by the prosecutor violated Petitioner's rights under Doyle, the error does not entitle Petitioner to habeas relief unless he can establish that the error resulted in "actual prejudice." Brecht, 507 U.S. at 637. In this case, Petitioner has not made the required showing. During the prosecutor's lengthy cross-examination of Petitioner, he only questioned Petitioner concerning his alibi twice, and both questions were the subject of objections that were sustained. The jury was admonished to disregard one of the questions. There was substantial evidence of Petitioner's guilt presented at the trial, including the testimony of the victims, the fingerprint evidence, and the Petitioner's own admission that he lived in the house where the offenses occurred, that he never returned to the house following the offenses, that he could not explain the fingerprint evidence, and that he knew the victims. The OCCA's conclusion that any constitutional error occurring at the Petitioner's trial in the form of prosecutorial misconduct was harmless beyond a reasonable doubt is not contrary to, or an unreasonable application of, clearly established law as determined by the Supreme Court.

The remainder of Petitioner's claim of prosecutorial misconduct asserted in his direct appeal related to the prosecutor's closing argument during the first stage of the trial. Petitioner referred to the prosecutor's statement that "You raise a defense and you don't present any evidence to corroborate it." Transcript of June 20th - 21st Jury Trial, at 182-183. Defense counsel objected to this statement, and the trial court advised the prosecutor to

"[m]ove on." <u>Id.</u>, at 183.  A short time later the prosecutor remarked, "Once again, this defendant tells you a story and presents nothing to corroborate what he is telling you.  He says this letter or this poem comes about because he had written a poem for Larry....No Larry or Stephany to come in and corroborate what the defendant...." <u>Id.</u>, at 184.  Again, defense counsel objected to this remark, and the trial judge noted the objection and advised the prosecutor to "move on." <u>Id.</u>  Petitioner asserted in his direct appeal, and it is assumed he is asserting herein, that these closing remarks by the prosecutor were improper and misleading as they attempted to shift the burden of proof to Petitioner.

A prosecutor may comment on the defendant's failure to present evidence or call witnesses. <u>Van Woudenberg ex rel. Foor v. Gibson</u>, 211 F.3d 560, 570 (10th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1161 (2001).  The prosecutor's statements during closing arguments in Petitioner's trial were proper comments concerning the absence of evidence to support Petitioner's alibi and his testimony concerning a letter Petitioner delivered to the female victim that he had authored in which he indicated his affection for her.  In light of the overwhelming evidence of Petitioner's guilt presented at the trial, the prosecutor's comments concerning the absence of evidence to support Petitioner's alibi defense and other testimony did not render Petitioner's trial fundamentally unfair.

In his direct appeal, Petitioner asserted that the prosecutor attempted to elicit sympathy for the female victim and vouch for her testimony during his closing remarks to the jury. Petitioner cited to one statement made by the prosecutor in which he directed the jury to consider the female victim's testimony and her "tears" during her testimony and then to

25

determine whether the female victim was "lying or making this up as she goes." Transcript of June 20th - 21st Jury Trial, at 190-191.  The prosecutor's comments merely asked the jury to determine the credibility of the witness based on her testimony.  This is not improper vouching for a witness's credibility.  Nevertheless, even if it was improper, such vouching for a witness falls within the general principle of due process fairness.  Under the circumstances present in this case, in which there was overwhelming evidence of Petitioner's guilt presented at his trial, the prosecutor's comments concerning the female victim's testimony did not render Petitioner's trial fundamentally unfair.  Petitioner is therefore not entitled to habeas relief concerning his claim of prosecutorial misconduct.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that the Respondent's Motion to Dismiss (Doc. # 10) be DENIED, that the Motion to Dismiss and/or Stay (Doc. # 21) be DENIED, and that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 be DENIED.  Petitioner's "Motion for Discover[y]" (Doc. # 33) is DENIED.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by   May 18th  , 2005, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  <u>Moore v. United States of America</u>, 950 F.2d 656(10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this __28th___ day of __April___, 2005.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE